# Estate of Herman Heller, deceased.    Appeal of Carter & Company.

*·· Contract—Time is of essence of a contract to deliver chattels.*

In mercantile transactions, such as the sale of goods, time is generally held to be of the essence of the contract; and where one of the terms of the contract provides a date for the shipment or delivery, shipment or delivery at the time fixed will usually be regarded as a condition precedent, on the failure to observe such date the other party may repudiate the entire contract.

*Contract—Construction—Written and printed parts.*

When the written and printed parts of a contract cannot be reconciled, the former is presumed to have been separately and particularly considered by the parties, and to express their exact agreement on the subject.

Argued Oct. 21, 1897. Appeal, No. 24, Oct. T., 1897, by Carter & Co., from decree of O. C. Phila. Co., Oct. Sess., 1890, No. 99, dismissing appellant's claim in distribution. Before Rice, P. J., Wickham, Beaver, Reeder, Orlady, and Porter, JJ. Affirmed. Porter, J., dissents.

Exceptions to adjudication of Penrose, auditing judge.

At the adjudication of the estate of Herman Heller, deceased, a claim was presented by Carter & Company for goods sold and delivered to decedent which was dismissed by Penrose, auditing judge, in an adjudication, which was, inter alia, as follows :

The claim of Carter & Company, at whose instance the account was so filed, was for goods sold, $113.49, with interest from April 23, 1889, under a contract with the decedent, of which the following is a copy :

"No. 101.                              Phila., March 16th, 1888.
" Carter & Co., Counter Check Book Makers, Niagara Falls, N. Y., will please ship me        on or about        one-half at once, one half within one year, via Freight on (25th March) 88, Ten thousand " B " Counter Check Books, for which I agree to pay the sum of 2¼ cents each.   Total, $225, at their office.
" Payable as delivered.      (Signed)          H. Heller,
" Cash and Charge index.                              Ryan.
" Send proof."

The contract is written on a printed blank; the first two lines, except the word "me" and the last two, except the words "I" "2¼" and "$225" being printed, and all of the rest, except the word "via" being in manuscript.

The proof requested at the foot of the paper was sent, and across it was written: "O. K., make 5000 yellow paper, 5000 white, for use on alternate days. (Signed) H. Heller, Ryan."

The first delivery in pursuance of this contract was made April 9, 1888. It was duly accepted and paid for (5,075 checks, $114.20).

The decedent was a manufacturer of ladies' wear and white goods, wholesale and retail. The checks are slips used by salesmen for the purpose of having proper entries of sales made upon the books of the merchant. In the present case, the name of the decedent, his address and nature of business, were printed at the top of the paper or slip, and after this a blank for the name of the salesman, the amount of sale, and amount received; and at the foot, the words: "In case of error, return this bill." It will be seen, therefore, that unless taken by the person for whom prepared, they were absolutely useless to the shipper, and incapable of being sold or disposed of to any other person.

On April 23, 1889, the balance of the order, viz: 5,044 checks, amounting to $113.49, were shipped from Niagara Falls to the decedent at Philadelphia, and upon their arrival were duly tendered at his store, 730 Arch street; but he had died previously, viz: January 22, 1889, and his executors, who were then engaged in winding up the business, declined to receive them. In a letter dated April 25, 1889, they wrote to the claimants: "We were much surprised to receive the enclosed bill, as we never ordered the goods and know nothing about them. You have evidently made a mistake in the name." In reply to this the claimants wrote, April 27, 1889, (apparently in ignorance of the death of the decedent as the letter was addressed to him):

"We hold your signed contract, dated March 16, 1888, for 10,000 check books, half of which were to be shipped March 25th and the balance within one year. This contract is signed 'H. Heller, per Ryan.' The first part of this contract was duly sent and the goods invoiced; the enclosed invoice is for the balance of the contract. We enclose herewith copy of the original contract so that you can investigate the matter."

To this the executors replied, April 29, 1889, returning the bill and saying: "We . . . . must positively decline to accept the goods, for the following reasons: The contract calls for the balance to be shipped within one year from March 16, 1888. That time has now expired, and besides, owing to the death of Mr. Herman Heller, the executors have assumed charge and are liquidating the business, and having no use for the books, must decline to accept them. We know nothing of any such contract, and had you notified us beforehand we would have advised you in time."

On May 1, 1889, the claimants wrote to the executors, denying their right to refuse the goods, and asserting that both the letter and spirit of the contract had been complied with on their part—the first shipment of the books having been made April 9, 1888, and the second April 23, 1889. They added that the fact that the executors " did not know that we were holding these books for Mr. Heller does not alter the facts of the case, nor does it relieve the estate of Mr. Heller from the responsibility of accepting and paying for the goods."

In reply to this the executors wrote, May 2, 1889, referring the claimants to their solicitor, Mayer Sulzberger, Esq.

It must, of course, be conceded that the death of the purchaser did not put an end to the right of the other party to the contract to insist upon payment; but this right was dependent upon performance by them in accordance with the terms of the agreement. When the case was presented to the auditing judge he was inclined to the opinion that such performance had been shown, and that the stipulation as to time, in view of the words " on or about," was not material; but further reflection had led to a different conclusion. The words " on or about " are printed in the form given to the decedent to fill up, but it is clear they are no part of his contract and are to be regarded as if erased. They must give way to the terms as written, and they are express that the half not presently delivered must be shipped " within one year." Whether the period of one year is to be computed from the date of the contract or of the first delivery is immaterial; more than a year from either having expired before the shipment was made.

It is true that in general, time is not regarded as of the essence of a contract for the sale of lands, but this is because the con-

tract itself vests the equitable estate in the vendee, and the completion of the transaction by transfer of the mere legal title is, in equity, not of sufficient importance to interfere with the right to demand specific performance because of delay, more or less prolonged, in asking for it. But the reason does not apply to contracts with regard to personalty, as to which it appears to be well settled that, in the absence of waiver, strict performance in every particular—quantity, quality, place and time is essential; and this irrespective of actual loss to the opposite party: Addison on Contracts, 233 ; Hare on Contracts, 570 ; Pollock on Contracts, 464; Cleveland v. Sterrett, 70 Pa. 204.

In the present case not only was there a failure on the part of the claimants to deliver at the stipulated time, but according to the testimony (Dr. Edwin A. Heller) there was actual inconvenience and loss to the estate of the decedent in consequence.

The auditing judge is forced to the conclusion that the executors of the decedent were not bound to receive the articles contracted for at the time they were tendered, and the claim must, therefore, be disallowed.

The balance of principal in the hands of the accountants, as set forth above, $            will be held for the purposes mentioned in the will of the testator.

Two commissions for the examination of witnesses were taken out on behalf of Carter & Company, the cost of execution of one of which, as stated by Mr. Cooper, was $15.00 and of the other $10.00. As the claim has not been sustained, these costs cannot, of course, be charged against the decedent's estate.

It is ordered and adjudged that the account be confirmed nisi on payment of clerk's fees.

Exceptions to the adjudication disallowing the claim of Carter & Company were dismissed by the court in banc in the following opinion by HANNA, P. J.

The single question in this case is whether claimants were bound by their contract with testator to deliver to him the remaining half part of the printed " counter check books " within one year from March 16, 1888.

The evidence is the shipment was not made until April 23, 1889. In the interval, testator died; and upon the arrival of the goods in this city, his executors refused to receive them;

upon the ground that claimants had not complied with the terms of the order given by testator or the contract entered into with them. The death of testator does not affect the right of the claimants to recover. The balance due is still a debt payable by his estate, provided the claimants performed their part of the contract.

It will be observed, the contract in this case is with respect to personalty, and the rule as to the performance of which differs from that applied to the specific performance of contracts with regard to the sale and conveyance of real estate. In such cases it seems that, in equity, time is not of the essence of the contract, except when controlled by other equities, as shown in Bispham's Equity (5th ed.), secs. 391, 392. But when a contract is made for the manufacture and delivery of articles of merchandise or other personal property on or before a certain day, or at a specified date, in the absence of proof of consent of the other party or waiver by him, strict performance of the terms and conditions of and compliance with the contract are required before recovery of the price agreed upon can be had.

The "counter check books" were to be delivered "within one year," and this, by the terms of the contract, was a condition precedent to the demand for payment. This being the case, no suit can be brought upon the contract, "until the condition has been fulfilled or its nonfulfillment excused." Again, "from the very nature of a condition precedent, it results that it must be strictly performed before the party on whom its performance is incumbent can call on the other party to fulfill his promise:" Tiffany on Sales, 153; Anson on Contracts, 380.

Upon a fair consideration of the language of the contract in this case, the intention of the parties seems very clear, that each was to be bound by the stipulation that the "counter check books" were to be printed and delivered "one-half at once, one-half within one year." The claimants had the right to deliver at any time within one year, and the testator was bound to pay upon the delivery. The "check books" were to be used in testator's retail business, and having his name and his own peculiar trade blanks, symbols, etc., printed thereon, were absolutely valueless and unsalable to any other tradesman or in any other business. This the claimants must be presumed to know.

The time thus fixed upon would appear to be considered by the parties as a material factor of the contract, and made by them an essential part thereof. Thus, " of the essence of the contract," and consequently a condition precedent: Tiffany on Sales, 154. See also Addison on Contracts, 233, Hare on Contracts, 570, Pollock on Contracts, 464, and Blackburn on Contracts of Sale, 225–227.

" In mercantile transactions, however, such as the sale of goods time is generally held to be the essence of the contract; and where one of the terms of the contract provides for the shipment or delivery, shipment or delivery at the time fixed will usually be regarded as a condition precedent, on the failure of which the other party may repudiate the entire contract: " Tiffany on Sales, 155 and cases cited in note. An " impossibility arising after the formation of the contract is not an excuse from performance, unless the impossibility results either (a) from the destruction of the specific goods which are the subject of the sale, or (b) from a change in the law: " Tiffany on Sales, 158, 160; Anson on Contracts, *321, and cases in note.

Furthermore, the contract was executory in its character. The " check-books " were not printed and sold and delivered to the purchaser so that the title passed to him, as in the sale of wool in Kitchen v. Stokes, 9 W. N. 48, and the removal and payment therefor within thirty days were held not to be of the essence of the contract; but they were to be manufactured and delivered at a future date fixed upon by the contract, thus showing that time was in the contemplation of the parties.

In Cleveland v. Sterrett, 70 Pa. 204, the defendants agreed to deliver to plaintiff 240 barrels of oil of quality named, etc., " any time between July 1 and Dec. 1," and it was held the defendants were to be the actors, as the claimants in the present case must be held, and were bound to be ready to deliver the oil on December 1st. AGNEW, J., said: " It is plain the contract fixed the time of delivery as Dec. 1, for beyond this date Cleveland & Co. had reserved no day of grace." They " were not ready then to deliver, and their failure gave Sterrett the right to rescind; " and " not being ready to deliver the oil and comply with their contract, could not demand the money of the plaintiff, nor recover damage from the plaintiff for his refusal to receive the oil after Dec. 1."

In Depuy v. Arnold, 1 W. N. 157, carpets were bought on the express condition they should be delivered and put down by a certain day. The carpets were not delivered nor put down on that day, nor on a subsequent day promised by the plaintiff. The defendant accordingly refused to accept the carpets, and in an action brought to recover the price, plaintiff was refused judgment for want of a sufficient affidavit of defense.

In the case before us there is no hardship to the claimants, except that arising from their own laches and oversight of the express conditions of the contract. They performed part of the contract, as did the testator by payment for half of the " check books " ordered, and they had full notice they could not demand payment for the remainder, unless they delivered them to him " within one year."

We cannot reach any other conclusion than that the parties intended time to be " of the essence of the contract," and as claimants failed in performance within the time agreed upon by them, their claim is properly disallowed.

The exceptions are dismissed and the adjudication confirmed.

*Errors assigned* were (1) In dismissing appellant's first exception to the adjudication of the auditing judge, which was as follows : " Because the learned judge erred in law in finding regarding the written contract of claimants, Carter & Company, Limited, with decedent, the words ' on or about ' are printed in the form given to the decedent to fill up, but it is clear they are no part of his contract, and are to be regarded as if erased." (2) In dismissing appellant's second exception to the adjudication of the auditing judge, which was as follows : " Because the learned judge erred in law in finding that the written contract, under the circumstances of this case, was to be construed exactly according to its terms, with the erasure of the words ' on or about,' while it is apparent, both from the contract and the admitted evidence, that the agreement was for the future delivery of printed matter, the order for which had to be sent to Niagara Falls, New York, a proof made and returned, the goods manufactured and shipped, and under which it is admitted that the first shipment, which was received and paid for, did not take place until twenty-four days after the contract was signed, and the words in the contract ' on or about ' thus adopted and rati-

fied by the decedent as a very part of the same. (3) In dismissing appellant's third exception to the adjudication of the auditing judge, which was as follows: "Because the learned judge erred in law in finding as to the contract in this case, that 'strict performance, in every particular—quantity, quality, place and time is essential' when it was clearly in evidence without contradiction, that the decedent gave an order for twice as many goods as he needed in order to get the advantage of a reduced price, and that the goods were manufactured according to the order by the claimants, one half of them shipped to the decedent, as agreed, while the other half was held for his convenience, and subject to his order at any time, and no evidence was produced to show that they had ever been called upon to make any shipment." (4) In dismissing appellant's fourth exception to the adjudication of the auditing judge, which was as follows: "Because the learned judge erred in finding from the testimony, that 'there was actual inconvenience and loss to the estate of the decedent in consequence' of the nondelivery of the balance of the goods, when the testimony does not bear that evidence, and the letter written by the executors, when the balance of the goods was tendered stated: 'The executors have assumed charge and are liquidating the business, and having no use for the books, we must decline to receive them'; showing conclusively that the reason they did not want them was because the decedent's business had passed into their hands, and the books were no longer appropriate for use in the store, and this is further shown by the testimony of Dr. Heller that the retail business was carried on until Christmas following the tender of the goods." (5) In dismissing appellant's fifth exception to the adjudication of the auditing judge, which was as follows: "Because the learned judge disallowed the claim of Carter & Company, Limited, as presented, and did not allow to them the full amount of their claim with costs of the commissions."

*Samuel W. Cooper*, for appellant.—The principles governing the point whether time is the essence of the contract in cases like this are so well settled and accepted by the mercantile community that it does not appear that any case exactly in point has been brought into court.

If no demand is made until after the time stipulated, the sell-

er is entitled to a reasonable time after such demand within which to deliver: Holt v. Brown, 63 Iowa, 319.

Where it is the buyer's duty to designate the time of delivery the seller is not bound to act until he has been notified of the place chosen: Shaw v. Grandy, 5 Jones (No. Car.), 56.

In fact the vendor, under the conditions of the agreement in this case, is a bailor: Oakley v. State, 40 Ala. 372.

*Ephraim Lederer*, for appellee.

OPINION BY RICE, P. J., January, 18, 1898:

The appellants argue, that the point of this case is whether time is of the essence of the contract, when the vendee of goods has them specially manufactured for his use and leaves them in the possession of the vendor subject to order. But we do not so understand the question raised. The contract, as evidenced by the decedent's written order which was accepted by the appellants, contains nothing which indicates that the second instalment was to be held subject to order. Nor do we find any competent parol evidence that such was the understanding of the parties. The appellants were the actors and were bound to ship the goods within the time specified in the contract without further order unless performance within that time was excused or waived.

The authorities cited in the opinions of the auditing judge and of the court upon exceptions, as well as others that might be cited, show that a stipulation as to the time of delivery in an executory contract for the sale of goods is an essential and not a collateral term. A distinction has been drawn in favor of contracts for work or skill, and the materials upon which it is to be bestowed, and as to such it has been said that " a statement fixing the time of performance of the contract is not ordinarily of its essence, and a failure to perform within the time stipulated, followed by substantial performance after a short delay will not justify the aggrieved party in repudiating the entire contract but will simply give him his action for damages for the breach of the stipulation: " Beach on Contracts, sec. 619. We doubt whether this distinction would hold good in ordinary mercantile contracts although the goods were to be manufactured. Merchants are not in the habit of placing upon their

contracts stipulations to which they do not attach some value and importance, and that alone might be sufficient answer to the question why time of shipment should be deemed an essential term: Bowes v. Shand, L. R. 2 App. Cases, 455; Burdick on Sales, 142. The contract under consideration was not a mercantile contract, it is true; that is to say, the goods were not ordered with a view to sell them. They were however of a special pattern and were ordered for a special purpose. They were valueless to any one but the purchaser, and would be of no value to him if he did not continue in the mercantile business he was then conducting. Ample time was allowed for the performance of the contract, and from all the circumstances it is reasonable to suppose that the parties actually intended that performance within that time should be a condition precedent to a right to recover the price.

It is probable that the appellants agreed to furnish the books at a less price, because they could make them all at one time but we fail to see how this fact affects in any way the question of their duty to deliver them within the time specified. If it has any bearing it tends to show that the failure to deliver was without even plausible excuse. As the learned president of the court below well says: "In the case before us there is no hardship, to the claimants, except that arising from their own laches and oversight of the express conditions of the contract."

When the written and printed parts of a contract cannot be reconciled the former is presumed to have been separately and particularly considered by the parties and to express their exact agreement on the subject. See Grandin v. Ins. Co., 107 Pa. 26; Haws v. Fire Assn., 114 Pa. 431; Duffield v. Hue, 129 Pa. 94; Dick v. Ireland, 130 Pa. 299; Lane v. Nelson, 167 Pa. 602. This rule was properly applied in the present case. When the parties came to fix the time for delivery, instead of naming a specific date " on or about " which the second instalment should be shipped by the appellants and accepted by the purchaser, they designated a period within which it was to be shipped, leaving the precise date of shipment within that period to the option of the appellants. Whether the year was to be computed from the date of the contract (which is the more reasonable construction) or from the date of the first shipment, is immaterial; because, in either case, the goods were not shipped within the time specified in the contract.

For these reasons, in connection with those set forth in the able opinions of the auditing judge and of the court below the decree is affirmed and the appeal is dismissed at the cost of the appellants.

PORTER, J., dissents.