# Germain Fruit Company v. Thomas Roberts & Co., Appellants.

*Evidence—Latitude of cross-examination.*

The rule requiring testimony to be confined to the point in issue is less strictly enforced in the cross-examination of witnesses than in their examination in chief.   When the sole object of the cross-examination is to ascertain the accuracy or credibility of a witness and is confined to matters to which he has testified in chief, there is no ground for reversal.   For this purpose a witness may sometimes be cross-examined as to collateral facts although the cross-examiner may be bound by his answers, and will not be permitted to contradict them.

*Contract—Time as essence of contract—Waiver.*

If time be made of the essence of the contract that may be waived by the conduct of the purchaser; and if time is once allowed to pass and the parties go on negotiating for completion of the purchase then time is no longer of the essence of the contract.

*Contract—Estoppel by waiver of terms.*

When a party to a contract induces another to act upon the reasonable belief that he will waive certain rights or terms he will be estopped to insist upon such rights or terms to the injury of one misled by his conduct.

Argued Oct. 10, 1898.   Appeal, No. 61, Oct. T., 1898, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1895, No. 349, on verdict for plaintiff.   Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit.   Before WILLSON, J.

It appears from the record that plaintiff sued defendants upon an executory contract (the text of which is set out in the opinion of the court) for the sale of prunes.   It also appears· from the evidence that the carload of prunes arrived in Philadelphia in the first days of October, 1895, when they were rejected by defendants, who alleged that they were not such goods either in quality of condition, as plaintiff was required under the contract to deliver.   The evidence established the following facts : That the prunes tendered were somewhat sandy and gritty, that they were not shipped from California until September 17, 1895, while the contract required them to be shipped not earlier than the first day of September nor later than the

15th of the same month, that they arrived in Philadelphia some time in the first days of October, that by a mistake of the plaintiff's shipping clerk in California, the car containing the prunes intended for the defendants was shipped to V. L. Cavanaugh & Co., and the draft and bill of lading sent to them instead of to the defendants, that at the time of the rejection, and afterwards until suit was brought, the defendants did not know the date when the prunes were actually shipped from California. On the question whether the prunes tendered were of the quality called for by the contract, the evidence was conflicting. Other facts appear in the opinion of the court.

Verdict and judgment for plaintiff for $262.49. Defendants appealed.

*Errors assigned* were (1) in allowing the plaintiff to prove by Charles A. Carey and Samuel Cowan that the defendants, after rejecting the car of prunes, subsequently purchased the car from other persons who had purchased it from the plaintiff, and in overruling the defendants' objections to the following questions: " (*a*) To Charles A. Carey: Q. Did not your firm subsequently buy these prunes in question? (Objected to.) The Court: If you propose to follow that by showing that they subsequently bought them as prunes of the grade they undertook to buy from the plaintiff, I think you are entitled to do it. (Objected to. Objection overruled. Exception for defendants.) A. I understand we bought them through other parties. Q. Do you know what you paid for them? A. Four and three quarter cents delivered here. (*b*) To Samuel Cowan: Q. I believe it was you who subsequently sold the prunes to Thomas Roberts & Co., was it not? (Objected to. Objection overruled. Exception for defendants.) A. Yes, sir; I finally sold them." (2) In charging the jury: "So that if you be of the opinion, upon the evidence, that it was a matter of the essence of the contract, that is, a substantial part of the contract, something which the parties contracted for, regarding it as a matter of importance that the prunes should be shipped in the first half of September, and they were not shipped in that period of time, as indeed they were not, then the plaintiffs would fail of their right of recovery for that reason."

*Theodore W. Reath*, with him *Thomas Reath*, for appellants. —The plaintiff's case was at an end when the loss was proved, and it was error to admit the evidence of the subsequent sale of the goods to the defendants: Velott v. Lewis, 102 Pa. 326.

A specific time for performance was mentioned in the contract, but was admittedly not complied with by the plaintiff. The court was under the duty of construing the contract, and should have charged the jury as a matter of law that time was of the essence of the contract, instead of (as was done) charging the jury that they were to determine this question as a matter of fact upon the evidence: Bowes v. Shand, L. R. 2 App. Cases, 455; Young v. White, 5 Watts, 460.

The same rule has been repeatedly approved and applied by the Supreme Court of Pennsylvania: Axford v. Thomas, 160 Pa. 8; White v. Wolf, 185 Pa. 369.

And the rule is the same in the Supreme Court of the United States: Norrington v. Wright, 115 U. S. 188: Slater v. Emerson, 19 How. 224.

The defendants at the time of rejecting the goods, rejected on other grounds than the failure by the plaintiff to comply with the stipulation in the contract as to time. When the goods were rejected the defendants did not know of this failure by the plaintiff. There was no waiver by the defendants of the stipulation as to time, and the court should have directed the jury to find for the defendants: Shaw v. Lewistown Turnpike Co., 2 P. & W. 454; Veazie v. Bangor, 51 Me. 509.

A case directly in point upon all essential facts with the facts in the case at bar was decided in the court of appeals of New York in 1874: Newbury v. Furnival, 56 N. Y. 638; Ins. Co. v. Wolff, 95 U. S. 326.

As was well said by Ross, J., in Shaw v. Turnpike Co., 2 P. & W. 454, already cited: "It would be dangerous for the jury to decide whether the party had abandoned his rights. This power can only be safely intrusted to the courts, who alone can, in the exercise of it, give uniformity to the law."

Upon the authority of White v. Wolf, 185 Pa. 369, and the Act of May 20, 1891, sec. 2, P. L. 101, we respectfully submit that this judgment should be reversed and a judgment entered in favor of the appellants, without a new venire.

*James Collins Jones*, with him *Lewin W. Barringer*, for appellee.—The contract in this case called for choice new fruit, undipped. The main question at the trial was as to whether or not the prunes delivered by the plaintiff to the defendants were such fruit and this question was properly for the jury.

No question was ever raised by the defendants as to the time of delivery until after this suit was brought.

It is submitted that after having gone so far as to refer the question of the quality of the prunes to arbitrators upon their arrival in Philadelphia, and co-operating with the arbitrators in getting the samples for examination, the defendants cannot, when the arbitrators have decided against them, and after suit has been brought by the plaintiff, raise the entirely new objection that the shipment was not made in time: McKay v. McKenna, 173 Pa. 583.

Under these circumstances, it is submitted that if the plaintiff did not get binding instructions that the jury could not consider this defense based on the time of shipment, the defendants suffered no injury in the court leaving it to the jury to determine whether, under all the circumstances of the case, the parties meant to make shipment before the 15th day of September an essential term of their contract: Morgan v. Love, 173 Pa. 444.

OPINION BY RICE, J., November 14, 1898:

This was an action upon an executory contract of sale, which was as follows:

"PHILADELPHIA, Aug. 1, 1895.

"Sold to Mess. Thos. Roberts & Co., Philada., Penna. For account of Germain Fruit Co., Los Angeles, Cal. One Car Cal. Prunes in Bags at 4¼c. per lb. F. O. B. Cal. Equal quantities Each Size 60's 70's 80's 90's Choice New Fruit undipped—first half Sept., Shipment—Cash S. D. on arrival & Ex. of goods.

"J. M. STAUFFER & Co."

The prunes were shipped from California on September 17, and arrived in Philadelphia on or about October 1. The defendants examined the goods, and after some negotiations, to which we shall refer hereafter, refused to accept them, because, as they alleged, they were not such goods either as to quality

or condition as the plaintiff was required under the contract to deliver. The plaintiff subsequently sold the goods to a third party, and brought this suit to recover as damages their loss on the resale.

Upon cross-examination of the defendant's representative the plaintiff was permitted to draw out the fact that the defendants had bought the prunes of this third party, and paid for them at the rate of four and three fourths cents per pound, which, according to the testimony, was equivalent to three and five eighths cents on the Pacific coast. The court correctly instructed the jury that this fact was not conclusive of the question, whether the prunes were " choice prunes such as the contract called for," and gave the jury very good reasons why they should not regard the defendants as concluded by this action. But it by no means follows that it was error to permit the witness to be cross-examined upon the subject. He had testified in chief as to what was meant in the trade by the term " choice new undipped fruit," and had sworn, that, if prunes are unmerchantable through being mixed with stones, or dirt, or sticks or anything of that kind, they would not fulfil a contract for " choice " fruit; also that these prunes were unmerchantable because they were sandy and gritty. Thus it is seen, that the cross-examination related to a fact,—namely the unmerchantability of the goods— stated in the examination in chief, and the object was to draw out from the witness a fact within his knowledge—namely that the defentants actually bought them for a fair price—which had a natural tendency to show the inaccuracy of the statement made in the examination in chief.

The rule requiring testimony to be confined to the point in issue is less strictly enforced in the cross-examination of witnesses than in their examination in chief. When the sole object of the cross-examination is to ascertain the accuracy or credibility of a witness and is confined to matters to which he has testified in chief, there is no ground for reversal. For this purpose a witness may sometimes be cross-examined as to collateral facts although the cross-examiner may be bound by his answers, and will not be permitted to contradict them. In view of the fact that the witness was the defendant's buyer and had asserted in his examination in chief that these prunes were not merchantable, the court committed no error in permitting

him to be asked the question complained of in the first assign-
ment of error.

We come, then, to the second branch of the defense, which
was, that the stipulation as to the time of shipment was an
essential term of the contract and that strict compliance there-
with was a condition precedent. It appears that when the goods
arrived in Philadelphia and delivery there was tendered, the
objection that they had not been shipped on or before Septem-
ber 15, was not even suggested. This defense was an after
thought, or, as the defendants allege, an after discovery. The
defendants' sole objection was, that they were not such goods
as the plaintiff undertook to furnish. This was the point of
dispute. According to the uncontradicted testimony the de-
fendants then proposed an arbitration; the plaintiffs accepted
the proposition; arbitrators were chosen, and they inspected
the goods and decided " that the prunes were choice undipped
prunes but a little gritty." Notwithstanding this, the defend-
ants persisted in their objection and definitely refused to accept
the goods. After suit was brought they raised the objection
now under consideration.

In the contracts of merchants, the time of shipment is a con-
venient means of fixing the probable time of arrival, with a
view of providing funds to pay for the goods, or of fulfilling
contracts with third persons, and is ordinarily regarded as of
the essence of the contract; especially if the property is subject
to sudden, frequent or great fluctuations in value. When time
is of the essence of the contract it is a condition precedent,
and, in the absence of waiver, strict performance is required,
before the party on whom it is incumbent can call on the other
party to fulfil his promises to accept and pay for the goods.
See Beach on Contracts, 1616, et seq.; Norrington v. Wright,
115 U. S. 188; Heller's Estate, 6 Pa. Superior Ct. 246, and
authorities there cited. If the words of the contract are equiv-
ocal and susceptible of two interpretations the subsequent acts
of the parties may be resorted to to show how they understood
their contract and the practical construction they put upon it.
If, however, the contract—speaking still of mercantile con-
tracts—expresses the time, and the words of the contract are
unambiguous the general rule is, that the question is one of
construction, and therefore one of law for the court and not of

fact for the jury: 2 Benj. on Sales, §§ 884–887, 1024 (4th Am. ed.); Bowes v. Shand, L. R. 2 App. Cases, 455. Granting that the words of this contract are not ambiguous, and assuming for a moment that the defendants had, without more, simply refused to accept the goods, they might argue with much force, that it was the duty of the court to declare as a matter of law that time was of the essence of the contract, and might complain that the submission to the jury of the question of the intention of the parties did them harm. But not only were they silent as to the objection they now urge, but they induced action on the part of the plaintiffs which, at least, involved delay, if not expense, pending the arbitration.

The performance of a condition precedent may be waived by a party in whose favor it is stipulated, either expressly or by the implication resulting from his acts or conduct. " But if time be made of the essence of the contract that may be waived by the conduct of the purchaser; and if the time is once allowed to pass and the parties go on negotiating for completion of the purchase then time is no longer of the essence of the contract:" Webb v. Hughes, L. R. 10 Eq. 281; Hipwell v. Knight, 1 Y. & C. 401. See also, McKay v. McKenna, 173 Pa. 582; Pollock on Contracts, *464. It is said there can be no waiver implied here because the defendants did not learn until after suit was brought that the goods had not been shipped until the 17th. But the plaintiff did not conceal the fact and a simple inquiry would have brought the information. If the arrival of the goods was later than they expected, and had reason to expect, the delay put them on inquiry as to the time of shipment. Their conduct had a natural tendency to show, that under their interpretation of the contract the trifling delay in shipment was immaterial—as the jury have found—or to lead the plaintiff to believe, and to act on the belief, that strict performance was waived.

In either view of the question it is now too late to set up their ignorance, for which no one is responsible but themselves, as an excuse. Having put their objections to accepting the goods upon the single ground that they were not such goods as to condition and quality as the contract called for, and having induced an arbitration upon the point in dispute, they were not in a position after suit brought to set up the present de-

fense. We think the undisputed facts of the case, taken in connection with the verdict of the jury upon the disputed facts, bring it within the just and equitable principle, that when a party to a contract or transaction induces another to act upon the reasonable belief that he will waive certain rights or terms he will be estopped to insist upon such rights or terms to the injury of one misled by his conduct: 7 Am. & Eng. Ency. of Law, 32; Waters v. Wolf, 2 Pa. Superior Ct. 200.

Judgment affirmed.