Homer G. Howard, Appellant, v. Charles Anderson, Appellee.

## Gen. No. 15,475.

1. APPEALS AND ERRORS—*when rulings upon evidence not subject to review.* In the absence of objection made in the trial court rulings upon evidence are not subject to review.

2. EVIDENCE—*when letters incompetent.* Letters written by the party offering them, not replied to, which are mere self-serving declarations, are not competent.

3. EVIDENCE—*when reliance upon false representations constitutes defense.* The owner of property dealing with a real estate agent in the matter of exchange of properties may rely upon representations of such agent as to the title of the property to be acquired and may urge reliance upon such representations, if shown to be false, as a defense to an action for commissions without showing that he exercised ordinary prudence.

Assumpsit.   Appeal from the Circuit Court of Cook county; the Hon. C. M. WALKER, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1909.   Affirmed.   Opinion filed May 16, 1911.

LOUIS T. ORR, for appellant.

MARION MILLER, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

Suit was brought by the appellant, the plaintiff below, for commissions alleged to be due on the exchange brought about by appellant of appellee's interest in real estate in Chicago, consisting of an apartment house, for a farm in Iroquois and Kankakee Counties, Illinois, together with the personal property thereon.   The owner of the farm and personal property was W. C. Thompson, and his agent in Chicago was W. F. Poole.

The record discloses that the appellant, doing business under the firm name of H. G. Howard & Co., had negotiated the exchange of the apartment house for property in Michigan.   This transaction, however, was not consummated and resulted in a suit brought in the name of Anderson against the owner of the Michigan property.   This suit was compromised for the sum of $3,000, of which $1,150 was paid to the appellant.

Anderson's transaction with Howard was conducted through one A. D. Pitcher, an employe of Howard.   Ander-

son in his testimony insists that Pitcher said to him that as the Michigan deal, known as the Peters deal, did not go through he would charge but a nominal commission for conducting negotiations for the exchange of the apartment house for the Illinois farm owned by Thompson. Pitcher, on the other hand, testifies that he told Anderson that Howard & Co. would expect the regular commission of two and one-half per cent. of $55,000; that Anderson thought that that was too much, but offered to pay $900; that he (Pitcher) thereupon said that if Anderson would make it an even $1,000 he would take the matter up with Mr. Howard and see what could be done.

The declaration consists of the common counts with a copy of account, to which was filed a special plea, alleging that the plaintiff was not a regularly licensed real estate broker, and a second plea setting out with considerable fullness the claim of the defendant, who is the appellee here, that at the time of the transaction the appellant represented to the appellee that the only incumbrance on the Illinois farm was a mortgage of $7,500, whereas at that time the appellant knew that there was an additional incumbrance of about $1,500 in the form of a special assessment, and that "the plaintiff well knowing that the defendant would not make the exchange and assume said special assessment, had he knowledge thereof, and for the purpose of inducing the defendant to sign the contract and thereby obligate himself to make the exchange and for the purpose of getting a commission out of said transaction, designedly and fraudulently concealed from the knowledge of said defendant the fact of said special assessment and falsely and fraudulently represented to said defendant that the only incumbrance against said farm was for the sum of $7,500; that by reason of said false and fraudulent representation so made by the plaintiff the defendant was induced to sign said contract and thereby obligated himself to make said exchange and to assume said assessments."

The record shows three trials, one resulting in favor of the plaintiff, and the other two in favor of the defendant. The

last trial was before a jury, which rendered a verdict in favor of the defendant and against the plaintiff of $1,875.22, upon which judgment was entered.

The special assessment referred to was for a drainage tax. In order to prove the amount of the tax, the appellee introduced the certificate of the County Clerk for the County of Kankakee, reciting "the above and foregoing to be a true, perfect and complete copy of a certain petition to form the Little Beaver Special Drainage District filed in my office January 4, 1897, * * * the same being a complete record of the levy of said special assessment by 'Little Beaver Special Drainage District' in the Counties of Kankakee and Iroquois in the State of Illinois, so far as the same relate to," etc., describing then the farm referred to.

Error is predicated by the appellant upon the admission of the record, because of the alleged informality, etc., of the certificate. An examination of the bill of exceptions, however, shows that no objection was offered to the introduction of this proof, and of course no error assigned on its admission can be considered by us.

Three letters were offered in evidence by the appellant, and excluded. These letters, however, appear to be demands by the appellant for the balance of what he claimed to be due him for commissions. They were not replied to and were merely self-serving declarations and were properly excluded.

There had been a payment made by the appellee to the appellant of $400, the appellee insisting that it was made by him upon the promise of the appellant that the latter would clear up the assessment, and he asserts that instead of doing so the appellant converted the sum to his own use. This payment of $400 was the subject of the second plea of set-off interposed by the appellee.

The special assessment was payable in installments and bore interest, bonds having been issued by the Drainage District. Payment of these bonds could not be anticipated. We think, therefore, that no error was committed in allowing the interest to be computed upon the same up to the dates that they respectively fell due.

Complaint is made that by the verdict the jury did not allow the appellant the sum of $26.00 theretofore paid out by him for an abstract on the appellee's property. The amount of the verdict is not such that this court can say that the sum was not taken into consideration by the jury in arriving at its verdict. The appellee insists that if the jury had given him the full amount of his claim the verdict would have been for considerably more than $1,900.

We next take up the errors to which the argument of appellant is chiefly addressed, that is to say, the refusal to give four instructions tendered by the appellant, and the giving of several instructions tendered by the appellee and alleged to be erroneous. We have carefully read the instructions as given—three as requested by the appellant, and fourteen on behalf of the appellee. We think that three of the four refused instructions tendered by the appellant were properly refused, because they required that the defendant must have shown that he exercised ordinary prudence in relying upon the alleged misrepresentations of the plaintiff as to the incumbrances upon the property proposed to be acquired. The proof tended to show that the appellant's authorized agent knew of the special assessment.

Thompson, the man who owned the farm, testified that he made a memorandum of the assessment and the dates of maturity, which he delivered to either Mr. Pitcher or Mr. Poole, (Pitcher representing Howard as agent for Anderson, and Poole representing Thompson); that this was done in Thompson's office when Pitcher and Poole were present, and that he was advised to conceal from Anderson the fact that there was a special assessment upon the farm, and that he did not disclose it to him.

Poole (Thompson's agent) testified that he and Pitcher were in Thompson's office twice; that he had a conversation with Pitcher about the special assessment; that he told Thompson that he had talked with Pitcher about the special assessment. He testified: "When I first took the matter up with Mr. Pitcher I told him there was a heavy drainage tax upon the farm and that whoever took it up would have

to assume that.   He said that that would interfere with any
deal.   After that we talked about it nearly every day." All
of this was before the contract was signed.

Anderson testified that he first learned of the assessment
in the office of his attorney about ten days after he signed the
contract.

We think that appellee was justified in relying upon the
statement of Pitcher in regard to the assessment, and it also
appears quite clear that the matter of the assessment was
kept from him designedly by Pitcher and by Howard, the lat-
ter apparently having been in charge of the transaction when
it was closed.   Whatever may be the duty of a proposed ven-
dee of property in dealing with his vendor with regard to in-
vestigating for himself matters of this sort, the same rule
does not prevail where the relation is that of principal and
agent, attorney and client, trustee and *cestui que* trust.   We
think, therefore, that the instructions referred to were prop-
erly refused.   We have also carefully considered the other
instruction tendered by the appellant which was not given,
and also the objections raised to those given at the request of
the appellee, upon which error is predicated in the assign-
ments, and find no such error as, in our opinion, should oc-
casion a reversal of the judgment.

*Judgment affirmed.*