A. E. LANE, Respondent, v. J. W. ALDRICH, Appellant.

(189 N. W. 329.)

**Statement — matters as to mistake and oversight in failing to execute lease stated.**

1. Plaintiff and defendant made a parol agreement, whereby defendant should by a written agreement, lease for a term of five years a certain hotel building and seven lots, on which it was located, and by another and separate written agreement lease for the same period of time, certain garages situated on the same lots as the hotel. The lease of the hotel property was duly executed and delivered, but by a mistake and oversight of the parties, the lease of the garages was not executed.

**Evidence — held that landlord could show mistake and oversight in not executing separate leases for garages.**

2. The plaintiff brought action to recover the agreed rental of the garages, covering a period of five months, during which the defendant had use thereof.

It is *held* that it was not error to receive plaintiff's evidence showing ing the mistake and oversight.

**Evidence — evidence of mistake and oversight in not executing separate lease held not objectionable as varying written instrument.**

3. It is further *held* that the reception of such evidence in the circumstances in this case, was not vulnerable to the objection that its effect was to vary the terms of a written instrument.

Opinion filed June 14, 1922.

Appealed from a judgment of the District court of Barnes county, *Englert, J.*

Judgment modified; and as modified, affirmed.

*Combs & Ritchie,* for appellant.

These negotiations or conversations had prior to the execution of the written lease, Exhibit 1, tended to vary the instrument, and were inadmissible because, under the statute, § 5889, it is presumed that the entire agreement was contained in the lease, Exhibit 1, and it superseded all proceeding or accompanying stipulations concerning the matter. Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803; Gile v. Interstate Motor Car, 27 N. D. 108, L. R. A. 1915B, 109, 145 N. W. 732; Putnam v. Prouty, 24

N. D. 517, 140 N. W. 93; Manganese Steel Safe Co. v. First State Bank, 28 S. D. 426, 134 N. W. 886; McCulloch v. Bauer, 24 N. D. 109, 139 N. W. 318.

·"Evidence which would entirely change the legal effect of the language used in the lease is not admissible in evidence to disclose a supposed intent of the grantor." Finke v. Finke, 37 S. D. 46, 156 N. W. 595.

"All the authorities agree that where in the absence of fraud or mistake, the parties have deliberately put their contract in writing which is complete in itself and couched it in such language as import a complete legal obligation, it is conclusively presumed that they have introduced into the instrument all material terms and circumstances relating thereunto." J. I. Case Threshing Mach. Co. v. Loomis, 31 N. D. 27, 153 N. W. 479; Wynn v. Coonen, 31 N. D. 160, 153 N. W. 980; Reitsch v. McCarty, 35 N. D. 555, 160 N. W. 694; S. Spiegal & Son v. Alpirn (Neb.) 185 N. W. 415; Millard v. Millard, 180 N. W. 429.

"Parol evidence cannot be received to vary the terms of a lease of dwelling house to show the intention of the parties as to the extent of the lessee's use of the lot but the intent must be found by an examination of the lease." Merdith v. McCormick, 175 N. W. 280.

"A written contract or lease, being plain and intelligible, evidence of what the parties said in negotiating for it is inadmissible. There being no ambiguity in the instrument, parol evidence was inadmissble to explain or vary its meaning." Conklin v. Silfer, (Ia.) 174 N. W. 573; Phelps v. Brevoort, 174 N. W. 281; Stavanau v. Gray (Minn.) 172 N. W. 885; Richard v. Lee, 171 N. W. 382; Borchert v. Coons, 171 N. W. 70.

"Evidence of any prior or contemporaneous parol agreement which tends to vary or contradict the terms of a lease is inadmissible." Ency. of Evidence, Vol. 9, p. 458; Haycock v. Johnston, 81 Minn. 49, 83 N. W. 494; Armington v. Stelle, 27 Mont. 13, 69 Pac. 115, 43 L. R. A. 125.

*A. P. Paulson,* for respondent.

It is a well established principle that courts of equity have power to reform written instruments to conform to the true intention of the parties. It follows that parol evidence is admissible for the purpose of showing that by reason, either of fraud or mistake, a written instrument does not truly express the intention of the parties. Hence, parol evidence is admissible to show the true intention of the parties. Rittle v. Woodward, 31 N. D. 113 (153 N. W. 951); Forester v. Van Auken, 12 N. D. 175, (96 N. W. 301); French v. State Farmers Mut. Ins. Co. 29

N. D. 426 (151 N. W. 7) ; Northwest Thresher Co. v. Hulburt (Minn.) 115 N. W. 159; Merchants v. Pielke (N. D.) 82 N. W. 878; Christ v. Diffenbach (Penn.) 7 Am. Dec. 624; 22 C. J. p. 1224; Dec. Ed. Vol. 17 on Reformation of Instruments; Greimer v. Swartz (Iowa) 149 N. W. 598.

"The distinction between actions at law and suits in equity and the forms of all such actions and suits heretofore existing are abolished; and there shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated by a civil action." Section 7355, C. L. 1913 and also § 7321, C. L. 1913; French v. State Farm Mut. Hail Ins. Co. 29 N. D. 426, (151 N. W. 7).

"Though parol testimony is in general inadmissible to vary a written instrument, yet equity will grant relief in cases of fraud and mistake, and carry the intention of the parties into execution, where the written agreement fails to express it." Tucker v. Madden, 44 Me. 206; Murray v. Drake, 46 Cal. 644.

GRACE, J. This is an action to recover the alleged agreed rental of $55 per month of certain property consisting of two garages. The time for which rent is claimed to be due is from July 1, 1920, to December 1st of the same year. The plaintiff had judgment in the court below. This appeal is from the judgment.

The material facts are, in substance, as follows: During the times herein mentioned, plaintiff owned seven lots, 1 to 7, both inclusive, in block 18 of the original plat of Valley City. On the lots was a large hotel building, the Kindred. On the 29th day of July, 1920, plaintiff entered into a written lease with the defendant, apparently, whereby, according to the purport of its terms, she leased the property above described to defendant, except certain portions of it reserved in the lease. She reserved from the operation of the lease a basement on the west end of the hotel, the Kindred Pool Hall, a portion of the basement occupied by a Chinese laundry, a portion of the first floor occupied by the Straus Clothing Store, a portion of the building occupied as a hardware store, including the basement under the same, and the second story over that store. No other reservations were made. The term of the lease was for five years, commencing August 1, 1920, and ending August 1, 1925, with the right to extend the lease at its expiration for an additional

term of five years. The agreed rental per month stipulated in it was $400. The building was to be used for hotel purposes. The lease was duly executed by both parties. Defendant entered into possession of the property under the lease.

Under the property described in the lease, also described in the complaint, are two garages. It is the claim of plaintiff that it was the intention and agreement between her and the defendant that a separate lease was to be executed, covering the two garages, which were situated on the same lots described in the lease of the hotel; that the agreed rental value of them was $55 per month; that the term of the lease was the same as that of the other lease above mentioned; that she has been at all times willing to execute the lease of the garages and deliver the same to the defendant, pursuant to her agreement; that he has refused, and still refuses, to execute the lease. Plaintiff further claims that the agreement to lease the two garages was part of the same transaction as that represented by the lease of the hotel property, above described; that at the same time she prepared and delivered to him for inspection the lease of the hotel property and lots. She also prepared and delivered to him for inspection a lease of the garages, which also describes all of the lots described in the former lease. She claims, in substance, that the leasing of the hotel, including lots 1 to 7, and that of the garages, was intended and agreed by both parties to be accomplished by separate leases, and that at the time the lease of the hotel and of the lots above mentioned was executed by mistake and oversight of the parties the execution of the lease of the garages was overlooked or forgotten. Defendant in his answer admits entering into the written lease first above mentioned; concedes plaintiff's ownership of the premises, and that he is in possession of the premises; otherwise he entered a general denial to the allegations of the complaint. The relief demanded by plaintiff is that the defendant be required to execute the lease covering the garage buildings; that she recover judgment for $275 for the five months' rent she alleges has already accrued, and her costs and such other relief as to the court may seem just and equitable.

While the action in some respects, from part of the relief demanded sounds in equity, yet primarily it is one to recover for the agreed rental of the garages for five months at $55 per month. The legal query which arises is, conceding that the lease of the hotel described all the lots described in the lease of the garages, and that it was on its face apparently a complete lease, may the plaintiff show by parol testimony that it was

agreed by the parties that a separate lease should be made of the hotel, and of the garages, that these agreements were made at the same time, and that by mistake and oversight the lease of the garages was not executed? The defendant maintains that to permit the plaintiff to do so would be tantamount to permitting the terms of a written instrument— the lease of the hotel—to be varied by parol testimony. In view of the issues formed by the pleadings, we do not believe this contention is of any real significance. It is clear from the complaint and a preponderance of the evidence that plaintiff claimed to have executed and delivered the lease of the hotel property and of the lots to operate as a lease of the hotel only, and that she had theretofore prepared, as above stated, a separate lease of the garages, which she and defendant intended and agreed to have executed at the same as the one of the hotel; that the execution and delivery thereof was by a mistake and an oversight of the parties overlooked at the time of the execution and delivery of the lease of the hotel property.

The defendant having, among other allegations of his answer, interposed a general denial, this claim of the plaintiff became an issue of the fact. It is one of the principal issues of the case.

The trial court submitted two questions to the jury:

(1) Was it agreed between the plaintiff and defendant that the defendant was to pay a separate rental for the garage and barn at the sum of $55 per month, and that he was and agreed to sign a separate lease therefor, as evidenced by Exhibit 2?

(2) If so, then was the failure to sign Exhibit 2, the unsigned $55 a month lease for the garage and barn, an oversight? In other words, was the signing of it overlooked by and through a mistake?

The verdict of the jury returned on a form prepared for it by the court reads:

"We, the jury in the above-entitled action, find in favor of the plaintiff and against the defendant and assess her damages in the sum of $275, with interest thereon at the rate of 6 per cent. from November 1st, 1920."

The above questions were answered in the affirmative. The verdict shows for itself; the evidence by a large preponderance sustains the contention of plaintiff. She, her attorney, Mr. A. P. Paulson, and the plaintiff's sister, Miss Kate C. Kern, testified in plaintiff's behalf. Their testimony is direct and certain, was given without equivocaton, and wholly sustains the claim of plaintiff. The testimony of Mr. Paulson shows

that he prepared the two leases, Exhibit 1, the lease of the hotel, and Exhibit 2, the lease of the garages, at the same time, and delivered the same to Miss Kern, plaintiff's sister. This was on or about the 29th day of July, 1920. Within a day or two after these leases were drawn a copy or duplicate of each was handed to the defendant by Miss Kern, who was acting for plaintiff in having the leases drawn.

Mr. Paulson's testimony further shows that Exhibit 2 is in the same form exactly as prepared by him; that subsequently and in November, 1920, at the direction of the plaintiff, he called upon the defendant at the Kindred Hotel; that at that time he (Paulson) had both leases in his possession, and demanded of the defendant the rental claimed to be due under Exhibit 2; that defendant in reply said that he was unable to pay; that he inquired of the defendant if it was not true that he had these leases in his possession prior to the execution of the lease of the hotel proper, and he said yes; that he (Paulson) inquired how it happened that he had not executed the one for the garage; that he said it had been overlooked at the time they were at the bank, by himself and Mrs. Lane; that he had promised to sign it, but had submitted the matter to his attorney, and had been advised by him not to sign the lease, because he did not think the agreement was binding. He said, "I slipped one over on Mrs. Lane that time." This conversation occurred in the afternoon of the day the complaint was drawn, or on the day before, in the lobby of the Kindred Hotel.

It appears from the testimony that prior to the signing of the lease of the hotel property the plaintiff and defendant had two separate meetings at the First National Bank; that at the first meeting the plaintiff had the lease of the hotel property and of the garages with her. They did not sign either of the leases at this meeting. The plaintiff took the leases with her, and left the lease of the garages at the hotel. When she next went to the bank, she did not take this lease with her, but took with her only the lease of the hotel. At this second meeting at the bank, the lease of the hotel was signed by both parties and delivered by plaintiff to the defendants. Shortly after this, Miss Kern saw the defendant, and asked him if he had signed the lease for the garages. He said he would like to look it over, and to leave it with him for a time; that he would look it over and sign it. The defendant's testimony is largely contradictory of that offered by plaintiff. The only direct testimony on the part of defendant was that given by him, as a witness in his own behalf.

Defendant's principal contention is that parol testimony may not be

received to contradict or vary the terms of a written contract. This statement of a well-recognized rule of evidence is largely true as applied to negotiations and statements occurring prior to the execution of a written contract, with these important exceptions, viz. where the execution of it was procured by fraud, or where there was some accident or mistake in its execution. The rule upon which the exceptions rest is stated thus, in 10 R. C. L. 1056, § 251:

"As a general rule, a person whose rights or liabilities are affected by a written contract may introduce parol evidence to show accident, mistake or fraud, where the writing fails to express the actual agreement, and to prove the modifications necessary to be made, whether such variations consist in limiting the scope of the contract or in enlarging and extending it so as to embrace land or other subject-matter which had been omitted through the fraud or mistake."

See citations of cases in note 18 of § 251.

The principal purpose of this action is to show that the lease of the hotel property covered only that property, and did not cover the garages, and that at the same time it was agreed that a separate lease should be made for each.

As we have above intimated, the plaintiff, from the relief demanded, has to that extent assumed the action in part one in equity; we think, however, this assumption under the facts of this case not at all necessary, as the law afforded a plain and adequate remedy for the relief sought. The facts pleaded in the complaint were such as in reality stated an action at law to recover the agreed rental of the garages. The plaintiff was bound to plead the facts if they existed, which would show that Exhibit 1 covered only the lots heretofore mentioned and the hotel; that it did not include the garages; that the garages were to be rented under the terms of a separate lease, Exhibit 2; that Exhibit 2 by mistake and oversight was not executed. The facts thus pleaded and denied by the defendant in substance create an issue of law and of fact.

The action was not for the reformation of Exhibit 1. If it were of that character, the defendant's objections that certain of plaintiff's evidence should not be received for the reason that the reception of it would vary the terms of a written instrument would be of no force; the very purpose of such an action implies of necessity the right to dispute the terms of the written instrument and to show by parol evidence that its stipulations do not express the real intentions of the parties. This action was not brought nor based upon that theory. It was based upon

the theory that there was an agreement between the parties to execute separate leases of the hotel property and of the garages, and that by mistake and oversight the latter lease was not executed, and that upon evidence establishing these facts plaintiff was entitled to recover the agreed rental of the garages for the time they have been occupied by the defendant. It is clear from the record that both parties tried the action on the theory that it was an action at law. The plaintiff by introducing evidence of the facts alleged in the complaint and the defendant by multifarious objections to the introduction of the evidence, which it was claimed, varied the terms of a written instrument, Exhibit 1. This was also the theory of the trial court. All of the questions of fact were submitted to the jury absolutely, and not for an advisory verdict. The court did not make any findings of fact nor conclusions of law, but it accepted the verdict of the jury as wholly determinative of all the issues of fact. Upon that verdict it made an order for judgment, and judgment was entered accordingly. That part of the prayer of the complaint which requests that defendant be required to execute the lease Exhibit 2 may be considered in this case mere surplusage.

That part of the judgment which grants other relief than the recovery of $275 and costs and disbursements is broader than the issues, and the verdict upon which judgment was entered, the judgment should be modified so as to be effective as to the judgment for the amount just above mentioned.

Defendant in his brief states:

"We have assigned no less than 19 specific instances in which we claim the court erred during the progress of the trial of this action, but in the last analysis there are but four questions for determination in the case:

"First, the right of plaintiff to maintain the action under her pleadings and proof.

"Second, the error of the court in admitting both documentary and parol evidence over the objection of the defendant as entered and registered at the time the said proof was offered and received.

"Third, the error of the court in instructing the jury as pointed out in the assignments and specification.

"Fourth, the insufficiency of the evidence to sustain the verdict and judgment because of the reasons set forth in our nineteenth assignment of error."

Our previous discussion has sufficiently covered all the foregoing and

all the errors included therein, with the exception, perhaps, of those based upon instructions given by the court. The errors in this respect were based principally on the submission by the trial court in its instructions of the special questions above mentioned. We find no reversible error in any of the instructions complained of. We are of the opinion that the court properly submitted those questions to the jury in connection with all of the other facts of the case, and are further of the opinion that the instructions as a whole fairly stated the law of the case. The evidence is sufficient to sustain the verdict.

The appellant predicates error on the reception in evidence of Exhibit 3, a certain letter written by the defendant to the plaintiff, claiming that it is simply an offer of compromise unaccepted. It was offered in evidence, not for the purpose of showing any compromise or settlement, but as tending "to throw light on the original agreement." If it be conceded that the letter contained an offer in the nature of a compromise, that does not render it admissible in evidence, if it contained competent evidence for other purposes. Kennell v. Boyer, 144 Iowa, 303, 122 N. W. 941, 24 L. R. A. (N. S.) 488, Am. Cas. 1912A, 1127.

We are of the opinion that the reception of the letter in evidence did not in the circumstances of this case, and in view of the purpose for which it was introduced constitute prejudicial reversible error. All the assignments of error have been examined, and there is no reversible error therein.

The judgment is modified in the respcet above mentioned, and, as so modified, is affirmed. The respondent is entitled to her costs and disbursements on appeal.

ROBINSON, J., concurs.

BRONSON, J. (specially concurring). I concur in the affirmance of the judgment for $275 rent and costs. The complaint alleges the execution of a written lease covering the lots involved and the Hotel Kindred at a monthly rental of $400. The tenendum and habendum clauses in written lease provide:

"To have and to hold said premises, as the same now are, for the purpose of conducting therein a hotel business * * *and the said lessee hereby agrees to use and occupy said premises as a general hotel and for the purpose of conducting therein a hotel business."

This written lease further requires the lessee to comply with certain ordinances and state laws covering, and applicable to, hotel properties. It further provides that the lessee mortgages the furnishings, fixtures and supplies in the hotel for purpose of securing rent payments due from time to time. The complaint also alleges an agreement for a lease covering two garages situated upon the lots described in the written executed lease; that it was the intention and agreement between the parties to execute a lease upon such two garages in the manner and form contained in the proposed lease attached to the complaint; that through mistake and oversight the parties failed to execute such lease; that the defendant took possession of the two garages, and has had possession thereof for five months, for which there is due $275 as rent. The proposed lease offered in evidence covers two garage buildings situated on a portion of the lots mentioned in the written executed lease. The term is for five years; the monthly rental $55. The tenendum and habendum clauses therein provide "to have and to hold the same for garage purposes for the term of five years," etc.

The answer admits the written executed lease, that the same is now in full force and effect between the parties, and that the defendant is in possession of the premises by virtue thereof. It generally denies the other allegations of the complaint.

Upon these issues, the action was tried before a jury. A general verdict was returned in plaintiff's favor. Upon this verdict the trial court made an order for judgment; that the plaintiff recover $275 rent; that the proposed lease be declared to be the lease between the parties for the term of five years at a monthly rental of $55; that monthly rentals commence on December 1, 1920, and continue until the termination of the lease. Pursuant to such order, judgment was entered.

As stated in the opinion of Mr. Justice Grace, two principal questions were submitted to the jury in the instructions of the trial court: First, whether there was an agreement to pay a separate rental for the garages and to execute a separate lease therfor; and, second, if there was such an agreement, whether the failure to execute such lease was through oversight and mistake. The general verdict of the jury has answered both of these questions in the affirmative. I am of the opinion that the evidence amply warrants such findings. The principal contentions of the defendant are grounded in the complaint that the trial court erred in permitting the introduction of oral testimony to vary the terms of the written executed lease. Upon such general ground, the defendant ques-

tions the right of the plaintiff to maintain the action under the pleadings and proof, the action of the trial court in admitting both documentary and parol evidence and in instructing the jury thereupon, and the sufficiency of the evidence to sustain the verdict.

It is evident that this action was treated as a law action. The trial court did not regard the verdict as advisory nor make findings. No reformation of any lease was requested. No reformation of the garage lease or the agreement therefor was necessary, in order to maintain this action for rent accrued. Although the prayer of the complaint requests specific performance, no specific performance is required in order to permit plaintiff to recover such rent accrued.

The gist of plaintiff's action, as alleged and as tried, is an action for rent for a period of occupancy by a lessee under an agreement for a lease. It is not an action to recover rent due for the hotel premises.

Plainly, if the complaint had made no reference to the written executed lease and had set up the facts concerning the agreement for the lease and the failure to execute the same through oversight and mistake, followed by an allegation of occupancy by the lessee and the failure to pay rent therefor as agreed, such complaint would state a legal cause of action for rent during the period of such occupancy. The issues otherwise submitted by the plaintiff, or the defendant, served to disturb this legal cause of action by injecting the allegation of a written executed lease, the terms of which, concerning the property described, cover the two garages.

By reason of the issue tendered upon the written executed lease, it became necessary for the plaintiff to explain and render inapplicable the specific written terms of this lease covering the hotel, in order to maintain an action for rent of the garages. To thus explain and render inapplicable the written executed lease, parol evidence was necessary. Such parol evidence was received by the trial court. This parol evidence, pursuant to the verdict, shows that the parties agreed upon two leases; one for the hotel property, another for the garages. It was the intention of the parties that these leases be executed at the same time; both for a similar term, but for different rentals; both covering the same lots, but different properties. Both leases, before execution, were drawn by the same attorney, but through a mistake only one, in fact, was executed. If both leases had been signed and delivered at the same time as the jury found that the parties intended and agreed, an ambiguity would have appeared concerning the application of the two leases. An apparent con-

flict would have appeared in the description of the real estate. Nevertheless from the surrounding collateral circumstances and extrinsic facts the leases could readily have been harmonized, and the properties in each intended to be leased identified. Patrol evidence would have been admissible for such purposes.

The present action differs only in the respect that the lease for the garages was not executed. The intention and agreement of the parties nevertheless remain the same. If the written executed lease covering the hotel property had not been injected in this case, it would have been competent for the plaintiff to have proved by parol the intention and the agreement for the lease of the garages and the occupancy taken by the lessee pursuant thereto. Such parol testimony remained competent, when, upon the introduction of the written hotel lease, it served to prove an evident mistake and ambiguity therein, in connection with the garage lease.

In this respect it may be noted that the written executed lease is a lease for hotel purposes. The lessee agrees to use the premises for hotel purposes. The unexecuted lease is a lease for garage purposes. The evidence is sufficient to disclose that such purposes are different. Although the language of the written executed lease is intelligble, nevertheless, from the collateral circumstances and the parol evidence offered an ambiguity appears such as might be termed latent. Harney v. Wirtz, 30 N. D. 292, 304, 152 N. W. 803. For the purposes of explaining the ambiguity and the mistake which occasioned the same, parol evidence was admissible, even in an action tried to the jury. See French v. Ins. Co., 29 N. D. 426, 438, 151 N. W. 7, L. R. A. 1915D, 766; Durr et al. v. Chase, 161 Mass. 40, 36 N. E. 741; 22 C. J. 1192. I agree with the opinion of Mr. Justice Grace to the effect that the reception in evidence of a letter written by the defendant to plaintiff did not constitute prejudicial error.

CHRISTIANSON, J. (dissenting). In my opinion the trial court erred in admitting in evidence the letter written by the defendant to the plaintiff. The letter reads as follows:

"Mrs. Lane: I have been thinking about our talk yesterday, and it seems Mrs. Lane as though as much as I have put in the hotel fixing up and what I intend doing right away or just as I can get money to do with, and of course you know it makes the building so much better, it

seems to me as though you would be doing no more than right to let the past rent go towards helping on the hotel. You know this last year has been a hard one, and I am trying hard to make all the improvements I can, both to benefit the hotel and also myself. Now you think this over and see if you don't think you could do this and still feel as though it has been spent on your property for better improvements. You know no one has made a cent this last year, and of course we all hope it will be better. I would be willing to do this if you make the one year gratis. I will be willing to start the rent the first day of Aug., paying the rate of $25.00, which would be back rent coming to you of 4 months, Dec. 1 and continue at the rate of $25.00 per month. Hoping you can see this as I do, and that instead of being enemies can continue to be friends, as we should be. Yours as ever. Jack."

It seems to me this letter contains merely an offer of compromise, and I fail to see wherein anything said therein can be construed as an admission on the part of the defendant that the leasing arrangement was as the plaintiff contends it was. According to the contention of the plaintiff, the defendant agreed to pay $55 per month for the garage property from July 1, 1920. The letter was written on or about November 20, 1921. It will be noted that the defendant does not even offer to pay the rent claimed by the plaintiff in the future—his proposition is that he will pay $25 per month from August 1, 1921, but nothing for any period prior to that.

The letter was written two days before the case was tried. It will be noted that the letter refers to a conversation had between the plaintiff and the defendant the day before the letter was written. Before the letter was received in evidence the plaintiff testified that in such conversation the plaintiff and defendant discussed the pending action, and that the defendant made her a proposition of settlement.

In a case like this, where there is a square conflict in the evidence, and where the case practically resolves itself into one of credibility of the parties, it is manifest that the admission of this letter was prejudicial. See Jones, The Blue Book of Evidence, § 291. Hence a new trial should be awarded the plaintiff on this ground alone. I express no opinion upon the other questions discussed in the opinions filed by the majority members.

BIRDZELL, C. J., concurs in dissenting opinion.