## National Importing & Trading Company, Inc., Appellee, v. E. A. Bear & Company, Appellant.

### Gen. No. 29,353.

1. SALES—*construction of contract as to date of shipment.*  The meaning in a contract for the sale of merchandise, of a provision for shipment on a certain date, is to be determined by the intention of the parties to be ascertained by a literal interpretation of the contract if it is plain and unambiguous or with the aid of evidence of custom or usage if the contract is ambiguous.

2. SALES—*performance of sales contract as to date of shipment.*  The phrase "Shipment from the Orient, 75 cases in April, 50 cases in May, and 100 cases in June, 1920" used in a contract for the sale of egg albumen, in the absence of any evidence of a customary meaning, was complied with by placing the albumen on ships which would begin their voyages in the months named and was not violated by delivery on March 31 on board of a vessel which sailed April 1.

3. EVIDENCE—*competency of correspondence between parties in action on sales contract.*  In an action involving a contract for the sale and shipment of merchandise, letters of both parties representing the correspondence between them concerning the matter and containing competent matter for other purposes were admissible though they also contained self-serving declarations and an offer to compromise.

4. SALES—*admissibility of evidence of parol modifications of sales contract.*  Evidence of oral modifications as to quantities to be delivered at different times and as to terms of payments is

admissible in an action on a written contract for the sale and shipment of merchandise.

5. INSTRUCTIONS—*propriety of instructions ignoring defenses.* Instructions assuming to state the rule of damages but not purporting to summarize the elements essential to a recovery are not objectionable because they ignore defendant's defenses on the facts.

6. SALES—*construction of sales contract as to date of delivery.* A contract for the shipment of merchandise from the Orient within certain months cannot be construed as specifying any definite date for delivery, it appearing that from 90 to 120 days would be required for completion of the transportation, and the law will imply delivery within a reasonable time.

7. SALES—*when tender of performance by seller waived by buyer.* Where the seller of merchandise wrote to the buyer that they had goods which they could tender "in the strictest technical compliance with your contract" to which the buyer replied in a letter which was evasive and in effect constituted a rejection of the offer, tender was waived.

8. SALES—*effect of premature tender of goods by seller.* Tender of goods by the seller at too early a date will not prevent further tender.

9. SALES—*rejection by buyer on specified ground as waiver of other grounds.* A buyer, by stating as its reason for rejecting goods that the terms of delivery had not been complied with, waived all other grounds.

10. HARMLESS ERROR—*harmlessness of instructions submitting cause to jury on behalf of party against whom verdict should have been directed.* When it clearly appears that the plaintiff was entitled to an instruction directing a verdict in its favor there could be no reversible error in any of the instructions given on behalf of defendant in submitting the case to the jury.

Appeal by defendant from the Superior Court of Cook county; the Hon. SILAS COOK, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1924. Affirmed. Opinion filed April 13, 1925.

HOAG & ULLMANN, CHURCH, HAFT & ROBERTSON and THOMAS J. HICKEY, for appellant.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, for appellee; CHARLES F. RATHBUN, LOUIS G. CALDWELL and JOSEPH H. PLECK, of counsel.

428          APPELLATE COURTS OF ILLINOIS.

Natl. Imp. & Trading Co., Inc. v. E. A. Bear & Co., 236 Ill. App. 426.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by the defendant from a judgment in the sum of $18,500, entered upon the verdict of a jury.

The controversy arose out of a contract in writing in and by which plaintiff sold and defendant bought about 225 cases of Chinese Crystal Hen Egg Albumen at the price of $1.54 a pound, duty paid, f. o. b. Chicago.

The terms of payment were: Net cash, sight draft against bill of lading. The contract further provided, "Shipment from the Orient, 75 cases in April, 50 cases in May, and 100 cases in June, 1920."

The defendant refused to accept the goods and the market price having declined very much, the plaintiff sued for damages.

Seven counts of the declaration set up the contract *in hæc verba* and alleged a verbal request for modification of the time of delivery of the April and May shipments. Another count set up the contract, alleging tender pursuant to its terms and the wrongful refusal to accept. The consolidated common counts were also attached. The defendant filed pleas of the general issue and the Statute of Frauds.

There were motions for an instructed verdict by defendant, which were denied.

The contentions of the defendant are that "shipment" as used in the contract means a delivery on board a vessel; that time was of the essence, the respective dates of shipment warranties going to the identification or description of the goods sold, precise proof of which were conditions precedent to recovery.

The facts as to the shipments were stipulated. One hundred cases of the goods were placed on board the steamship Tajima Maru, bound for Seattle, on March 31, 1920. This steamer on April 1, 1920, left

port and arrived in due course at Seattle on May 2, 1920. On July 8, 1920, plaintiff delivered to defendant an order on White, Stokes & Company for 25 cases out of this shipment.

On May 5, 1920, 100 more cases were placed on board the steamship Suwa Maru lying off the port of Shanghai. The steamship left the port on May 6, arrived in Seattle in due course, and on July 8, plaintiff tendered defendant the bill of lading covering this shipment.

Defendant contends that plaintiff breached the contract since the first instalment of goods was put on board on March 31, 1920.

The court instructed the jury that the term "shipment from the Orient, 75 cases in April, 50 cases in May and 100 cases in June, 1920," referred to the time of departure from the Orient of the vessel upon which the respective quantities of albumen mentioned in the contract were loaded; and that the goods should arrive in Chicago under the terms of the contract within a reasonable time after shipment.

If defendant's contention is right, the court's instruction was wrong.

The defendant relies on *Bowes v. Shand*, 2 App. Cas. 455, decided by the House of Lords in June, 1877. The contract, as there stated, was: "The plaintiffs should sell and deliver to the defendants and the defendants should buy and accept from the plaintiffs * * * Madras rice, to be shipped at Madras, or coast, for the port of London, during the months of March and/or April, 1874, about 300 tons, per Rajah of Cochin," etc. The loading of the ship began on February 17, and between that date and the first of March, 8,150 bags were put on board. On March 2 the remaining 50 bags were put on board. Four bills of lading were signed by the master and delivered to the shippers. These were dated on the 23rd, 24th and 28th of February and the 3rd of March,

430     APPELLATE COURTS OF ILLINOIS.

Natl. Imp. & Trading Co., Inc. v. E. A. Bear & Co., 236 Ill. App. 426.

and acknowledged the receipt on these days of 1,080 bags of the rice and the remainder of the bags in February.

The Rajah sailed from the Madras coast on March 10 and arrived at London on August 14. The vendee refused to accept the shipment and the vendor sued. There was evidence given upon the trial to the effect that a March or April shipment of rice meant that "every bag should be put on board in March or April," although the witness said there was a difference in that respect when the ship was named. Witnesses for the defendants testified that it would not be a March or April shipment if a single bag was shipped in February, and the defendants' manager testified that in the absence of proof to the contrary, the bill of lading proved the date of shipment, and the judge instructed the jury that, if the loading had been conducted consecutively with ordinary and reasonable dispatch and was completed in March or April so that the vessel might sail in March or April, that was sufficient. The jury returned the verdict for the plaintiffs, the foreman adding, "The name of the vessel being given in the contract." The House of Lords held that this rice could not be tendered in fulfillment of the contract.

The distinguished author of Benjamin on Sales was counsel in that case. Following the rule there announced in his Work on Sales, 1892 edition, sec. 588-a, he states that it has now been decided by the highest authority that, in the absence of any trade usage, the expressions "to be shipped" or "shipment" will be construed to mean that the goods should be placed on board ship during the time specified.

In *Fisher v. Minot,* 10 Gray (76 Mass.) 260, that court says:

"The word 'shipped,' in common maritime and mercantile usage, means 'placed on board of a vessel for the purchaser or consignee, to be transported at his

risk'; and such a delivery is a constructive delivery to the purchaser.''

In *Clark v. Lindsay & Co., Ltd.*, 19 Mont. 1, the plaintiff alleged the sale of 370 cases of eggs at an agreed price delivered on board the cars in Lawrence, Kansas, and thereafter dressed turkeys to be shipped in the same car with the eggs on or before February 15, 1892, to plaintiff's place of business in Helena. The defense was that the eggs and poultry were not put on board the cars at Lawrence in such time that the shipment could leave on or before February 15. Plaintiff denied that it failed to put the merchandise on board in time so that it could be shipped on or before February 15, and denied that it was any part of the contract of plaintiff to cause the merchandise to depart from Lawrence on or before February 15. The court held with the plaintiff, saying that the signification of the word "shipment" was uniform; that according to the Century Dictionary, Black's Law Dictionary, it meant the putting of goods or passengers on board ship for transportation, or a quantity of goods delivered at one time for transportation whether by sea or land; that plaintiff was therefore under no obligation to see that the merchandise left on the 15th.

In the case of *Ledon v. Havemeyer*, 8 L. R. A. 245, it was contended the word "shipment" meant a clearance of the vessel as well as putting the goods on Board; but the court held otherwise, saying:

''The words 'shipment' and 'shipped' are now used indifferently to express the idea of goods delivered to carriers for the purpose of being transported from one place to another, over land as well as water, and imply with respect to carriage by land a completed act irrespective of the time or mode of transportation. *Caulkins v. Hellman*, 47 N. Y. 452; *Fisher v. Minot*, 10 Gray (Mass.) 260; *Schmertz v. Dwyer*, 53 Pa. 335.''

Such, the court said, was the signification given to

these terms by the lexicographers who were quoted.

In *Bowes v. Shand, supra,* the court had before it testimony as to the meaning of the word "shipment," and the court adopted the construction thus given by the merchants who testified. In the instant case the plaintiff offered evidence tending to show a meaning contrary to that for which the defendant contends, but the evidence was excluded by the court.

Moreover, there is, as we shall later point out, a material distinction between the language of the particular contracts involved in the cases cited and the contract which we are here required to construe.

Further, we are persuaded that in *Coyne v. Avery,* 189 Ill. 378 (a case very hard to distinguish on the facts from the instant one), our Supreme Court has laid down a rule inconsistent with the construction for which defendant contends. There, a memorandum of the sale of certain eggs contained the following: "five cars of eggs, one to be shipped from the country Tuesday, the balance Wednesday and Thursday, at 12¢ delivered Chicago."

The contract called for shipment from the States of Kansas and Nebraska. The evidence showed a shipment on Tuesday of that week of one car from Harrington, Kansas, and two cars from Beatrice, Nebraska; that on Wednesday no eggs were shipped; on Thursday one car from Wichita, Kansas, and two cars from Beatrice, and on Friday one car from Beatrice. The vendee refused to accept and when sued defended (as the defense is here made) on the ground that the eggs offered were not the identical eggs bought.

The court said:

"Appellants contended that the time of shipment was a material part of the contract, and the failure to ship each car at the precise time agreed upon gave them the right to rescind the whole contract.   *   *   *
The contract was purely executory for the sale of five cars of eggs to be delivered in Chicago, and no time

was specified for such delivery.  The intention of the parties was that the delivery should be when the cars arrived.  If there were no stipulation bearing on the question of the time of delivery the law would imply that it should be within a reasonable time.  The agreement of the parties, whatever it was, with regard to the days of shipment, had no relation to their rights except as fixing a probable time for arrival.  Where there is a specified time and place of shipment it is generally a warranty or a condition precedent, for the nonperformance of which a party may repudiate the contract; but in this case, the eggs were to be shipped from some point or points in the State of Kansas or Nebraska, and the time of shipment in such a case would only give a very indefinite and general idea of the time of arrival.  An agreement to ship at a certain time from a specified place is an absolute contract that the shipment will be made at the time; but we do not see how the rule can be applied to a contract like this, where a shipment from Wichita or Harrington, Kansas, or Beatrice, Nebraska, or any point in either State, would be in compliance with the contract.''

There is undisputed evidence in the instant case that China, Japan, Ceylon and Sumatra were customarily known as the Orient.  It would therefore seem that the place of shipment was far more indefinite than in *Coyne v. Avery, supra;* and therefore, conceding the rule for which defendant contends, its applicability cannot be granted.  The real test, of course, must be in this sort of contract, as every other, what was the intention of the parties.

In *George Wills & Sons, Ltd. v. Larzelere,* 288 Fed. 559, a contract was made at San Francisco for the sale of grated brown Australian onions.  The contract stated, ''Shipment to be effected from Australia by steamer on the 10th of March, 1917.''  The onions were delivered to the steamship at Melbourne, and the delivery completed there on March 7, 1917.  The vessel did not leave Melbourne until March 16, and

434    APPELLATE COURTS OF ILLINOIS.

Natl. Imp. & Trading Co., Inc. v. E. A. Bear & Co., 236 Ill. App. 426.

after touching at various ports en route arrived at San Francisco on May 4. The vendees refused to accept, and the vendor sued. There was a judgment of nonsuit. The Circuit Court of Appeals said:

"We concur with the court below in construing the contract as requiring the departure of the onions from Australia on March 10th. It may be conceded that, had the agreement been for 'shipment March 10th,' loading on board and possibly mere delivery to the steamship at the wharf would have been sufficient. But it will be noted that the phraseology is, 'Shipment to be effected from Australia by steamer on the 10th of March.' It is not shown that this language has a distinctive conventional meaning in commercial usage, and to the common understanding we think it would naturally import departure."

See also *Tobias v. Liesberger,* 105 N. Y. 404; *Walker v. Alexander,* 70 Okla. 136, 173 Pac. 439; *Germain Fruit Co. v. Roberts & Co.,* 8 Pa. Super. Ct. 500.

We have not deemed it necessary to discuss all these cases. *Coyne v. Avery, supra,* is, we think controlling; and the cases cited on either side are easily distinguishable.

Moreover, we hold that the real question in each case must be: What was the intention of the parties to the contract? If that intention can be ascertained by a literal interpretation of the words used, and if the meaning thus derived therefrom is plain and unambiguous, then such interpretation would control. On the other hand, if the circumstances surrounding the transaction are such as to cause doubt, or if the literal meaning is equivocal or ambiguous, evidence of custom or usage should be heard.

We hold that the phrase in the contract here considered, "Shipment from the Orient, 75 cases in April, 50 cases in May, and 100 cases in June, 1920," construed literally (and in the absence of any evidence tending to show the customary meaning) means that the albumen was to be placed upon ships which would begin their respective voyages in the respective

months named. That construction must be implied not alone from the circumstances, but also from the use of the preposition "from." If it had been the intention that mere delivery to the wharf or the placing of the goods on the boat was to amount to shipment, it would seem that either no preposition would have been used or the word "at" would have been chosen to express this intention.

The Century Dictionary defines the word "from" as follows: "Out of the limits; locality or presence of or connection with; expressing departure or point of departure; separation; discrimination; removal or distance in space, time or condition." The instruction of the court was therefore proper.

The defendant further contends that the court erred in admitting certain letters of defendant and also certain letters of the plaintiff; those of the plaintiff because, it is alleged, the same were self-serving; those of defendant because, as alleged, the same were in the nature of offers to compromise.

There was no error in either respect. The letters were parts of a mutual correspondence and the rules of law applicable are not different from those which would be applied to a mutual oral conversation. *Schwarzschild & Sulzberger Co. v. Pfaelzer*, 133 Ill. App. 346. Although some of these letters contained evidence of matter in the nature of an offer to compromise and other self-serving statements, all of them contained evidence which was competent for other purposes, and it was therefore not error to receive them in evidence. As to letters which contain offers of compromise, it has been so held in *Kennell v. Boyer*, 144 Iowa 303; *Lane v. Aldrich*, 48 N. D. 1086, 189 N. W. 329; *Arthur v. James*, 28 Pa. 236, and many other authorities from many States. See *Delogny v. Rentoul*, 2 Mart. (La.) 175; *Sanborn v. Neilson*, 4 N. H. 501, 508-9; *Hartford Bridge Co. v. Granger*, 4 Conn. 142; *Marsh v. Gold*, 2 Pick. (Mass.) 290; *Ger-*

*rish v. Sweetser,* 4 Pick. (Mass.) 377; *Beaudette v. Gagne,* 87 Me. 534; *Pelton v. Schmidt,* 104 Mich. 345.

That under the same circumstances letters which contain self-serving statements are nevertheless admissible has been often decided by the courts of this State. *Graham v. Eiszner,* 28 Ill. App. 269; *Howard v. Anderson,* 162 Ill. App. 256; *Morehouse v. Terrill,* 111 Ill. App. 460; *United States Health & Accident Ins. Co. v. Harvey,* 129 Ill. App. 104; *Bradley v. Hubbard,* 209 Ill. App. 236; *Olson v. Brundage,* 139 Ill. App. 559.

The undisputed evidence shows that there were oral requests on the part of the defendant for a modification of the terms of the contract as to the amounts to be delivered at different times and as to the terms of payment. The defendant now contends that the contract was within the Statute of Frauds and could not therefore be altered by a verbal agreement, and that oral evidence was not admissible for that purpose. To this point *Marshall v. Lynn,* 6 Mees. & W. 109; *Goss v. Nugent,* 5 B. & Ad. 58, are cited. In the reply brief many Illinois cases are cited to the effect that in suits based on the fourth section, all essential elements of the contract must be in writing, but these cases are not in point.

The rule contended for obtains in many of the States. A collection of cases bearing on this point appears in L. R. A. 1917B, at page 144, disclosing conflicting rulings and a condition of the law best described as "Confusion worse confounded." The seventeenth section of the Statute of Frauds was not the law of Illinois until enacted as a part of the Sales Act in the year 1915. The briefs do not disclose that the point has been passed upon by our courts. While, as a general rule, contemporaneous oral testimony will not be received to vary the terms of a written contract, evidence of subsequent oral agreements to vary the terms of such a contract will be received. The cases cited by defendant, however, seem

to hold that this latter rule does not obtain where the contract is within the Statute of Frauds. The theory is that the admission of such evidence would practically abrogate the statute. That in equity and in analogous cases where the fourth section of the Statute of Frauds is involved, our courts are disposed to hold that the terms of a written contract may be waived by acts *in pais* and that oral evidence of matters occurring after the execution of the contract is admissible appears from cases cited. *Vroman v. Darrow*, 40 Ill. 171; *Kissack v. Bourke*, 224 Ill. 352; *Fox v. Grange*, 261 Ill. 116; *Marshall v. Keach*, 227 Ill. 35; *Zempel v. Hughes*, 235 Ill. 424. The tendency of the later decisions of the English courts has been in the direction of holding that defendant, under circumstances such as appear in this case, is estopped from setting up such a defense. *Hickman v. Haynes*, L. R. 10 C. P. 598. And there has been an attempt to distinguish between a substitution of one agreement for another and a voluntary forbearance to deliver at the request of another. *Ogle v. Earl Vane*, L. R. 2 Q. B. 275.

In Massachusetts the courts have drawn a distinction between the original terms of the written contract and those terms which relate to the performance of it, holding that the latter might be varied by an oral agreement. *Cummings v. Arnold*, 3 Metc. 486.

In *Imperator Realty Co., Inc. v. Tull*, 228 N. Y. 447, the Court of Appeals stated the rule to be:

"The defendant by his mutual oral contract with the plaintiff is estopped from now claiming that the plaintiff who relied thereon was in default on the due day of the written contract because of its omission to then have the property free of the violations. He should not be allowed to take advantage of an omission induced by his unrevoked consent. (*Thomson v. Poor*, 147 N. Y. 402; *Arnot v. Union Salt Co.*, 186 N. Y. 501; *Swain v. Seamens*, 76 U. S. (9 Wall.) 254; *Brede v. Rosedale Terrace Co.*, 216 N. Y. 246.)

438    APPELLATE COURTS OF ILLINOIS.

Natl. Imp. & Trading Co., Inc. v. E. A. Bear & Co., 236 Ill. App. 426.

Parol evidence of the waiver constituting an estoppel as against the defendant under the circumstances was not error. (*Penn. Steel Co. v. Title Guarantee & Trust Co.*, 193 N. Y. 37.)''

In a concurring opinion, Cardozo, J., cites cases showing the evolution of the law, and says:

''The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. (*Riggs v. Palmer*, 115 N. Y. 506). The Statute of Frauds was not intended to offer an asylum of escape from that fundamental principle of justice.''

We approve the rule thus announced and find it applicable to the facts which here appear.

The defendant further contends that the court erred in giving certain instructions at the request of the plaintiff, and in particular complaint is made of instructions Nos. 5, 7 and 11, which it is urged in effect directed a verdict ignoring defendant's defenses on the facts. The rule for which defendant contends is announced in *Pardridge v. Cutler*, 168 Ill. 512, has been followed in many cases since, and remains the unquestioned law as indicated by innumerable citations. Nevertheless, that rule, as other rules, has its limitations. In the first place, it is not indispensable that an instruction which presents the plaintiff's theory of the case should anticipate and exclude every possible defense. *Mt. Olive & S. Coal Co. v. Rademacher*, 190 Ill. 538; *Chicago & A. R. Co. v. Harrington*, 192 Ill. 9; *City of Chicago v. Schmidt*, 107 Ill. 186; *O'Leary v. Zindt*, 109 Ill. App. 309; *Fannon v. Morton*, 228 Ill. App. 415.

In the second place, the rule announced in *Pardridge v. Cutler, supra*, does not apply to instructions stating the law with reference to damages which may be assessed in case the jury finds for the plaintiff on the issues. *Chicago, B. & Q. R. Co. v. Payne*, 59 Ill. 534;

*Bonato v. Peabody Coal Co.,* 248 Ill. 422; *Follett v. Illinois Cent. R. Co.,* 200 Ill. App. 289; *Illinois Cent. R. Co. v. Sanders,* 66 Ill. App. 439.

The instructions criticized do assume to state the rule of damages. In *Illinois Cent. R. Co. v. Sanders, supra,* but one instruction was given at the request of the plaintiff, as follows:

"The court instructs the jury that if you believe from the evidence that the defendant is guilty of the negligence charged in the declaration, and that the plaintiff was injured as in the declaration alleged, then you should find for the plaintiff. And in determining the amount of plaintiff's damages, if any has been shown by the evidence, you may take into consideration, etc."

This instruction was criticized as omitting the element of ordinary care required of the plaintiff, but the court held that, as the instruction related to the measure of damages, it did not need to contain a statement of all the elements of the plaintiff's case.

In an examination of the cases which have been placed before us in the voluminous briefs of the parties, we have not found one in which a clear definition is given of what instructions will be held to relate solely to the measure of damages. It would seem, however, that in order to come within the rule which requires all the elements necessary to a recovery to be stated, a given instruction should appear upon its face to purport to state facts sufficient to show a right of action. As was said in *Chicago & A. R. Co. v. Harrington, supra*:

"We have said 'all the law requires is that an instruction based on some particular hypothesis warranted by the evidence which undertakes to summarize the elements in the cause essential to a recovery upon that theory must not omit any essential matter.'"

Although the question is close, we think it can hardly be said that the instructions here criticized purport to summarize the elements in the cause es-

sential to a recovery, and are therefore disposed to hold the rule not applicable.

Moreover, we conclude the instructions were not erroneous because we have come to the conclusion on a consideration of all the evidence as it appears in the record that the court would have been justified in directing the jury to bring in a verdict for the plaintiff.

The uncontradicted evidence tended to show that a shipment from the Orient would require from 90 to 120 days ordinarily for its completion. The contract cannot, therefore, be construed to specify any definite date for delivery, and the law implies that the delivery should be made within a reasonable time. When these shipments arrived in July a tender was made to the defendant, but refused, and diligent efforts by plaintiff were insufficient to obtain a statement of its reason for such refusal. We are not, however, left in darkness; the continually falling market price for this product illumines the situation. And that the decline in price was the reason is established not only by oral evidence but by mutual correspondence between the parties presented in a supplemental abstract.

In a vague and indefinite way defendant stated that plaintiff "had not complied with the terms of the contract as to deliveries." Mr. Firman, plaintiff's treasurer, replied: "It can't be with respect to the 25 cases or the manner and time of delivery. We advised you beforehand and you agreed to it." To this defendant's representatives would neither say yes or no. Mr. Firman then (this being on July 14, and the time for delivery not having expired) told defendant that plaintiff had in New York at that time albumen of the same kind shipped in the months and of the quality as specified in the contract even as construed by defendant, which would be delivered to defendant if desired. The reply was that defend-

ant would not take anything under the contract.    Mr. Firman's evidence on this point is corroborated by a salesman, who testified that the attorney for the defendant then stated, "No deliveries would be accepted under the contract."    On August 28, that time still being within the period limited for deliveries according to the contract, plaintiff wrote:    "* * * We have 225 cases here which we can tender in the strictest technical compliance with your contract."    Defendant replied on August 31 in a letter which is properly characterized as evasive and as constituting a rejection of the offer.

As is said in 13 Corpus Juris 662, 664:

"Formal tender is unnecessary if the party to whom performance is due * * * fails or refuses to perform on his part. * * * Similarly, a tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained a vain and idle ceremony, as where he expressly declares he will not accept the tender if it is made."

The same law is laid down by our Supreme Court in *Osgood v. Skinner*, 211 Ill. 229.    Moreover, if we assume that the earlier tender of July 8 was defective, plaintiff was not thereby precluded from making a further tender.    13 Corpus Juris 669; *Lyman v. Gedney*, 114 Ill. 388.

Again, we are of the opinion that, having stated that its reason for rejecting the goods tendered was because deliveries had not been complied with according to the terms of the contract, defendant waived all other grounds.    *Olcese v. Mobile Fruit & Trading Co.*, 112 Ill. App. 281; *Cary Maple Sugar Co. v. Pierre Viau Maple Co.*, 173 Ill. App. 93; *Littlejohn v. Shaw*, 159 N. Y. 188; *Ohio & M. Ry. Co. v. McCarthy*, 96 U. S. 258; *Oakland Sugar Mill Co. v. Wolf Co.*, 118 Fed. 239.

It is unnecessary to discuss many other supposed

errors which defendant urges in regard to other instructions given. We are satisfied defendant has no defense which has not been waived as a matter of law, and that plaintiff was entitled to an instruction directing a verdict in its favor. It follows there could have been no reversible error in any of the instructions given.

The judgment is affirmed.

*Affirmed.*

McSURELY, P. J., and JOHNSTON, J., concur.